UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID SMYTHE, )
)
    *Plaintiff* )
)
v. ) No. 2:10-cv-251-GZS
)
MICHAEL J. ASTRUE, )
**Commissioner of Social Security,** )
)
    *Defendant* )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing past relevant work as a greeter or, alternatively, performing other work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of degenerative disc disease, Finding 3, Record at 9; that he retained the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he could lift and carry 10

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

pounds frequently and 20 pounds occasionally, could sit, stand, and walk for up to six hours in an eight-hour day with regular breaks but had to be allowed to sit or stand at will, could only occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds, could only occasionally balance, stoop, kneel, crouch, and crawl, and needed to avoid work with hazardous conditions such as unprotected heights or irregular and sloping surfaces, Finding 5, *id*. at 11; that he was capable of performing past relevant work as a greeter, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 14,[2] and that he, therefore, had not been under a disability, as defined in the Social Security Act, from December 31, 2002, through the date of the decision (January 19, 2010), Finding 7, *id*. at 16.[3] The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482

---

[2] The administrative law judge's alternative Step 5 finding is contained in his discussion of his Step 4 finding. *See* Record at 15-16.

[3] The plaintiff was insured for purposes of SSD benefits through December 31, 2005, *see* Finding 1, Record at 8, and, therefore, to obtain SSD benefits, was obliged to demonstrate that he was disabled on or before that date, *see Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009).

U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The administrative law judge also alternatively reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on the ground that, for various reasons, the administrative law judge's physical RFC finding is unsupported by substantial evidence. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 12) at 3-11. I find no reversible error and, hence, recommend that the decision be affirmed.[4]

### A. Summary of Arguments

The plaintiff asserts that, in determining his RFC, the administrative law judge made the following errors:

---

[4] To the extent that the plaintiff argued, in his statement of errors, that the administrative law judge relied upon an erroneous adverse credibility finding in crafting his RFC, *see* Statement of Errors at 3-4, his attorney withdrew that point of error at oral argument.

3

1. Failed to supply good reasons for rejecting the RFC opinion of treating source Robert Rovner, M.D., *see id*. at 4-5;

2. Ignored limitations assessed by a Disability Determination Services ("DDS") examining consultant, Robert Klotz, P.A., and by the plaintiff's examining consultant, Frank A. Graf, M.D., *see id*.;

3. Ignored a statement by a treating source, Jeffrey S. Ray, D.O., that it was very unlikely that the plaintiff's back pain ever was going to go away and that he was most likely going to require chronic pain medications for the rest of his life, and a statement by a treating source, Stephen Z. Hull, M.D., that it was doubtful that the plaintiff could ever be a mason again and that he should contact the Bureau of Vocational Rehabilitation for retraining, *see id*.;

4. Rendered an RFC opinion that was fully supported only by the physical RFC assessment of a nonexamining DDS consultant, Donald Trumbull, M.D., whose report cannot stand as substantial evidence because Dr. Trumbull did not have the benefit of review of subsequently submitted significant medical evidence of record, *see id*. at 10-11;

5. Overlooked a significant limitation assessed by a second nonexamining DDS consultant, Richard T. Chamberlin, M.D., that the plaintiff could work only in two-hour blocks, *see id*. at 11; and

6. In any event, improperly relied on the Chamberlin RFC opinion because Dr. Chamberlin, as well, did not have the benefit of review of subsequently submitted significant medical evidence of record, *see id*.

### B. Supportability of Physical RFC Finding

The plaintiff's challenge to the supportability of the administrative law judge's physical RFC finding falls short. The administrative law judge's assessment is both consistent with and

supported by the RFC opinions of Drs. Trumbull and Chamberlin. *Compare* Finding 5, Record at 11 *with id*. at 335-40, 362-67. The administrative law judge's omission of Dr. Chamberlin's reference to the plaintiff's capacity to work in two-hour blocks does not counsel otherwise.

At the conclusion of his RFC form, Dr. Chamberlin noted:

> This RFC is developed in the context of a request for reconsideration dated 7/13/08 in which the [plaintiff] alleges a change in his condition with increase in his anxiety and depression as well as continued pain. The entire MER [medical evidence of record] was reviewed. There is no new MER pertaining to the [plaintiff's] primary condition. He should be able to work for two hour blocks of time within the parameters of this RFC[.]

*Id*. at 367. In context, Dr. Chamberlin cannot fairly be understood to have thereby imposed an additional, significant limitation. Rather, he made clear that nothing had changed in the medical evidence of record since Dr. Trumbull had issued his earlier physical RFC opinion and that the plaintiff could work within the parameters of Dr. Chamberlin's similar RFC findings: that is, that he was capable of standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday and sitting (with normal breaks and with periodic alteration of sitting and standing) for about six hours in an eight-hour workday. *See id*. at 363, 367. In the circumstances, the term "two hour blocks" can only reasonably be construed as a reference to periods of concentrated work effort in between normal breaks. *See id*.

Nor, in the circumstances presented, does the submission of new medical evidence and treating and examining source opinions subsequent to the completion of the Trumbull and Chamberlin RFC opinions undermine their status as substantial evidence of the plaintiff's RFC. "[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC." *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011). "Factors to be considered include the completeness of the consultant's review of the full record

and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Id*. (citations omitted).

While Dr. Trumbull did not have the benefit of review of the Klotz report, *see id*. at 342, Dr. Chamberlin did, *see id*. at 368-69. To the extent that the administrative law judge erred in failing to independently assess the Klotz report, the error was harmless because the administrative law judge took it into consideration via Dr. Chamberlin's report. Moreover, as counsel for the commissioner observed at oral argument, Dr. Chamberlin incorporated all of Klotz's restrictions except for a limitation to lifting/carrying and pushing/pulling no more than 15 pounds on an occasional basis. *Compare id*. at 360 *with id*. at 363-64. Dr. Chamberlin deemed the plaintiff capable of lifting/carrying up to 20 pounds, with unlimited ability to push/pull. *See id*. at 363.

While neither Dr. Trumbull nor Dr. Chamberlin had the benefit of review of the Graf and Rovner RFC opinions, the administrative law judge supportably rejected the Rovner opinion, and there is no reason to believe that explicit consideration of the Graf RFC opinion would have altered his RFC finding or those of Drs. Trumbull and Chamberlin.

Dr. Rovner submitted a physical RFC assessment dated November 5, 2009, finding the plaintiff capable, *inter alia*, of lifting/carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking for less than two hours in an eight-hour workday, and sitting for less than six hours in an eight-hour workday, with a limited capacity to reach overhead. *See id*. at 446-48. Dr. Rovner ascribed these limitations to "[e]vidence of degenerative disc disease on lumbar x-ray. Patient report of low back pain. Years of low back pain complaint and doctor visits." *Id*. at 447.

6

Yet, as the administrative law judge observed, the physical limitations found by Dr. Rovner are inconsistent with the two office treatment records accompanying his report, in one of which Dr. Rovner noted that the plaintiff exhibited no pain symptomatology despite having apparently discontinued all pain medications completely. *See id*. at 13-14, 475. Moreover, as the administrative law judge stated, Dr. Rovner's findings appeared to be based on the plaintiff's subjective complaints rather than a review of the medical records. *See id*. at 13-14, 447. Assuming that Dr. Rovner qualified as a "treating source," this constituted the requisite "good reason" for rejection of his opinion. *See, e.g.*, 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion").

Based upon a review of the medical records and a one-time consultative examination, Dr. Graf stated in a report dated December 2, 2009, that the plaintiff had well-documented chronic lumbosacral axial skeletal pain meeting the criteria of Listing 1.05 (disorders of the spine). *See* Record at 450, 456. He also submitted a physical RFC assessment of the same date finding, *inter alia*, an ability to stand and/or walk for less than two hours in an eight-hour workday and to sit for less than six hours in an eight-hour workday, as well as limitations on reaching and handling. *See id*. at 458-61. The administrative law judge considered and rejected Dr. Graf's listings opinion but omitted to address his RFC assessment. *See id*. at 10-14. Nonetheless, the error is harmless. The administrative law judge supportably rejected Dr. Rovner's similar RFC opinion, finding it inconsistent with other medical evidence of record, including Dr. Rovner's own finding on October 12, 2009, less than two months prior to the Graf examination, of no pain symptomatology. *See id*. at 475. There is no reason to believe that his express consideration of the Graf RFC opinion would have altered his findings.

Although the plaintiff's counsel, at oral argument, contended that a failure to address an examining source's RFC opinion is remandable error, he cited no authority for that point. A one-time examining consultant is not a "treating source" and therefore is not subject to the "treating source" rule, pursuant to which a medical opinion may be rejected only for good reasons. *See, e.g.*, 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). My own research indicates that "failure by the ALJ to articulate or explain the weight given to the reports of the examining or consultative physicians can be harmless error." *Stoll v. Astrue*, No. 1:10cv01326 DLB, 2011 WL 2036712, at *10 (E.D. Cal. May 23, 2011).

To the extent that Drs. Trumbull and Chamberlin did not see the full panoply of treatment notes of certain treating physicians (Drs. Hull and Ray, as well as Jeffrey P. Corbett, D.O.) or any of the treatment notes of others (Windham Family Practice and Dr. Rovner), the administrative law judge supportably viewed that unseen evidence as consistent with his RFC assessment.

While under the care of Dr. Hull from March through December 2007, the plaintiff made good progress in therapy despite reinjuring his back while pushing a car, reported a decrease in pain, and engaged in snow shoveling and pushing a car, activities inconsistent with his asserted level of incapacitation. *See* Record at 12; *see also, e.g., id*. at 271 (shoveling snow), 273 (pushing car), 274 (plaintiff encouraged to reengage in home exercise program, which had provided benefit prior to pushing car), 277 (plaintiff reported stretching exercises had helped to decrease his pain and he had increased his walking program with his son), 280 (plaintiff had made great improvement in his activities, walking 20 minutes two to three times per day and playing ball with his son outside every day), 285 (plaintiff estimated a 40 percent improvement

in his symptoms with reduced pain severity, greater activity tolerance, and an improved recovery time when pain provoked).

While under the care of Dr. Corbett from March to June 2008, the plaintiff was initially noted to have a negative straight-leg raise, mild hypertonicity of the paraspinal muscles, and some tenderness to palpation at L4-L5, but reported no new pain symptoms for the remainder of that period and stated at his last appointment in June 2008 that he was having a "good summer, spending a lot of time with his son who is playing baseball[.]" *Id*. at 13, 329, 334, 389; *see also id*. at 392 (after plaintiff stopped taking oxycodone because he did not want to be taking the medication as a father, he experienced some mild withdrawal initially but since then had been feeling okay).[5]

When the plaintiff established care with Windham Family Practice, initially with Bethany Lake, M.D., in November 2008, he told Dr. Lake that he had left Dr. Hull's practice because he did not want to pursue steroid injection therapy, failing to mention that he was dismissed for punching a wall. *See id*. at 13, 444.

When Dr. Lake confronted the plaintiff in May 2009 with a drug screen finding no presence of benzodiazepines, suggesting possible diversion of prescribed medication, the plaintiff told Dr. Lake that he had been taking them, yet the following month, he reported to a different physician, Su-Anne Hammond, D.O., that he had not been taking his opiates because he was caring for his son. *See id*. at 13, 423-24.

When the plaintiff established care with a different Windham Family Practice physician, Judith A. Ziegler, D.O., in July 2009, he requested pain medication for a new assertion of neck

---

[5] The administrative law judge mistakenly stated that the plaintiff's treatment with Dr. Corbett began in February, rather than March, 2008. *Compare* Record at 13 *with id*. at 333. Nothing turns on the discrepancy.

pain although examination of his neck was unremarkable. *See id*. at 13, 418.[6] When cannabis appeared on a drug screen in August 2009, the plaintiff insisted that he did not smoke marijuana but that he was "occasionally around it." *Id*. at 13, 409.

When the plaintiff first established care with Dr. Rovner on October 12, 2009, Dr. Rovner noted that the plaintiff was exhibiting no pain-type symptomatology at that time, although the plaintiff reported being in a fair amount of pain after discontinuing Oxycodone and Percocet. *See id*. at 14, 475. When the plaintiff returned on November 30, 2009, Dr. Rovner recorded no abnormal objective findings, although the plaintiff complained that his back still hurt him "quite a bit." *Id*. at 474.

The administrative law judge supportably construed these longitudinal records as a whole as casting significant doubt on the plaintiff's claimed disabling level of symptomatology, with the plaintiff's pain appearing to be under adequate control even in some instances in which he was not taking prescribed pain medication, and the plaintiff engaging in activities inconsistent with incapacitating limitations. In the circumstances, the unseen records were cumulative.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.***

---

[6] The administrative law judge mistakenly stated that the plaintiff's treatment with Dr. Ziegler began in June, rather than July, 2009. *Compare* Record at 13 *with id*. at 418. Again, nothing turns on the discrepancy.

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 28th day of June, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge